UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOSE QUEZADA,

                    Plaintiff,

          v.                                                    **DECISION AND ORDER**
                                                               06-CV-228S
POOLE, ET AL.,

                    Defendants.


## I. INTRODUCTION

          In this action, *pro se* Plaintiff Jose Quezada alleges, pursuant to 42 U.S.C. § 1983,

that Defendants violated his Eighth Amendment right to be free from cruel and unusual

punishment by denying him adequate medical care while he was an inmate at Five Points

Correctional Facility ("Five Points") in the custody of the New York State Department of

Correctional Services.   Presently before this Court is Defendants' Motion for Summary

Judgment.[1]   For the following reasons, Defendants' motion is granted in its entirety.


## II. BACKGROUND

**A.      Facts**

          This Court assumes the parties' familiarity with the facts and record of proceedings

---

[1]In support of their Motion for Summary Judgment, Defendants filed the following documents: a
memorandum of law; a Statement of Undisputed Facts; Declarations by Daniel Weinstock, M.D., J.P.,
Gregoire, M.D., Dave Goodwin, Ray Williams, Joseph Szczygiel, Curtis Mason, David Wheeler, Gregg
Prentice, Thomas Poole, and Thomas Eagen, all with attached exhibits; and a reply memorandum.
(Docket Nos. 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 52.)
          In opposition to Defendant's motion, Plaintiff filed a memorandum of law and a statement of facts
with attached exhibits, as well as a reply memorandum.  (Docket Nos. 51, 53.)

in this case.[2]  The Court is presented with Defendants' Motion for Summary Judgment as to Plaintiff's remaining claim for inadequate medical care.  (Docket No. 31.)  Plaintiff originally filed his complaint on April 6, 2006.  (Docket No. 1.)  Plaintiff requested, and was granted, leave to proceed *forma pauperis* on August 9, 2006.  In the same Order, this Court dismissed, with prejudice, Plaintiff's First, Second, Third, and Fourth Causes of Action.  (Docket No. 7.)

Defendants brought the present motion for summary judgment on April 29, 2008 to dismiss Plaintiff's final claim– that he was denied adequate medical care in violation of his Eighth Amendment right against cruel and unusual punishment.   (Docket No. 31.)  After several missed deadlines, Plaintiff filed a response on December 30, 2008.  (Docket No. 51.)

### III. DISCUSSION

#### A.    Summary Judgment Standard

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.

---

[2]A thorough discussion of the facts of this case may be found in this Court's prior decision and order dismissing with prejudice Plaintiff's First, Second, Third, and Fourth Causes of Action.  (Docket No. 7.)

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion." Addickes v. S.H. Kress and Co., 398 U.S. 144, 158-59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970).  "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.  "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996).

But a "mere scintilla of evidence" in favor of the nonmoving party will not defeat summary judgment. Anderson, 477 U.S. at 252.  A nonmoving party must do more than cast a "metaphysical doubt" as to the material facts; it must "offer some hard evidence showing that its version of the events is not wholly fanciful." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); D'Amico v. City of N.Y., 132 F.3d 145, 149 (2d Cir. 1998).  That is, there must be evidence from which the jury could reasonably find for the nonmoving party. Anderson, 477 U.S. at 252.

By rule, judgment may also be entered against a party that fails to respond to a properly filed motion for summary judgment, if appropriate. Fed. R. Civ. P. 56 (e)(2).  This district's Local Rules provide for similar relief: a nonmoving party's failure to file and serve an answering memorandum or affidavit may constitute grounds for resolving the motion against it.  See Local Rule 7 (a)(2)(A) and (a)(3).

But failure to oppose or respond to a motion for summary judgment standing alone

3

does not warrant granting the motion: "the district court must still assess whether the moving party has fulfilled its burden of demonstrating that there is no genuine issue of material fact and its entitlement to judgment as a matter of law."  See Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244, 246 (2d Cir. 2004) ("failure to respond to [a Rule 56] motion does not alone discharge the burdens imposed on a moving party"); Amaker v. Foley, 274 F.3d 677, 681 (2d Cir. 2001).  If the moving party fails to submit evidence sufficient to meet its burden, "summary judgment must be denied even if no opposing evidentiary matter is presented."  Amaker, 274 F.3d at 681.  Consequently, the Second Circuit has emphasized that district courts "'in considering a motion for summary judgment, must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law.'"  Vt. Teddy Bear, 373 F.3d at 246 (quoting Custer v. Pan Am. Life Ins. Co., 12 F.3d 410, 416 (4th Cir. 1993)).

**B.    42 U.S.C. § 1983**

Civil liability is imposed under 42 U.S.C. § 1983 only upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws.  See 42 U.S.C. § 1983.  On its own, § 1983 does not provide a source of substantive rights, but rather, a method for vindicating federal rights conferred elsewhere in the federal statutes and Constitution.  See Graham v. Connor, 490 U.S. 386, 393-94,109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 145 n.3, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979)).  Accordingly, as a threshold matter in reviewing claims brought pursuant to § 1983, it is necessary to precisely

4

identify the constitutional violations alleged.  See Baker, 443 U.S. at 140.  Here, Plaintiff's claims are grounded in the Eighth Amendment.

## C.    Eighth Amendment Inadequate Medical Care Claims

The Eighth Amendment to the United States Constitution applies to the States through the Fourteenth Amendment and "prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes." Wilson v. Seiter, 501 U.S. 294, 297, 11 S.Ct. 2321, 2323, 115 L. Ed. 2d 271 (1991); U.S. Const. amend. VIII.   "[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well being." Helling v. McKinney, 509 U.S. 25, 32, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993) (quotation and citation omitted).

Plaintiff's § 1983 claim for deprivation of medical treatment in violation of the Eighth Amendment requires Plaintiff to show that Defendants acted with "deliberate indifference to serious medical needs." Harrison v. Barkley, 219 F.3d 132, 136 (2d Cir. 2000) (quoting Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)).  Deprivation of medical treatment claims are evaluated under a two-prong inquiry: both an objective and subjective prong must be satisfied. Thomas v. Nassau County Corr. Ctr., 288 F. Supp. 2d 333, 337-39 (E.D.N.Y. 2003).  The first part of this standard requires that the deprivation of care be objectively sufficiently serious. Mills v. Luplow, 391 Fed. Appx. 948, 950 (2d Cir. 2010).   The second part requires that defendants acted subjectively with deliberate indifference. Id.  Because this Court finds that Plaintiff has failed to meet the subjective prong, Defendants' Motion for Summary Judgment will be granted.

5

1.    **Deliberate Indifference**

Plaintiff alleges variously that Doctor Weinstock, who first examined him following his transfer to Five Points, acted negligently and intentionally in denying him a bottom bunk permit.  (See, e.g., Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Pl.'s Resp."), Docket No. 51, ¶¶ 11, 18.)  "[A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Mills, 391 Fed. Appx. at 950 (quoting Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).  However, "the Eighth Amendment is not a vehicle for bringing medical malpractice claims" and "not every lapse in prison medical care will rise to the level of constitutional violation."  Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003).  A plaintiff must do more than show mere disagreement over the course of treatment to have a constitutional claim.  Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998).  This amounts to a requirement that a plaintiff demonstrate that defendants had a state of mind equivalent to "criminal recklessness."  Victor v. Milicevic, 361 Fed. Appx. 212, 214 (2d Cir. 2010) (quoting Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996)).  Put another way, the complained of conduct must "shock the conscience" or constitute a "barbarous act."  Vega v. Rell, No. 3:09-cv-737, 2011 WL 2471295, at *16 (D. Conn. June 21, 2011) (quoting McCloud v. Delaney, 677 F. Supp. 230, 232 (S.D.N.Y. 1988).

Plaintiff's claim rests primarily on the fact that he was denied a bottom bunk permit, despite having paperwork from his previous physician, which requested that such a permit

6

be provided.  As a result of this denial, Plaintiff fell from his bunk, further injuring himself, and necessitating additional treatment.   Given this series of events, this Court must examine Plaintiff's claims of deliberate indifference both before and after his fall for violations of Plaintiff's constitutional guarantees.  Nevertheless, for the following reasons, neither period yields conduct sufficient to defeat Defendants' Motion for Summary Judgment.

Upon entry to Five Points on May 5, 2005, Plaintiff was examined by Doctor Weinstock.  Doctor Weinstock provided Plaintiff a knee brace and issued a Health Services Memorandum limiting Plaintiff's physical activity.  This Memorandum stated that Plaintiff should not be allowed to stand for more than one hour, squat, or do work on wet or slippery surfaces.  Doctor Weinstock also ordered an orthopedic consultation.  Although Plaintiff "openly expressed his need to be assigned a bottom bunk bed," (Pl.'s Resp ¶ 2), Plaintiff was not entitled to receive the treatment of his choice.  Chance, 143 F.3d at 702 (mere disagreement over proper treatment insufficient to create constitutional claim); Domenech v. Taylor, No. 9:09-CV-162, 2010 WL 6428459, at *5 (N.D.N.Y. Sept. 8, 2010) (method of care is classic example of matter for medical judgment).

Only upon review of Plaintiff's medical file was it determined that he should be granted a temporary lower bunk pass.  This temporary pass was issued on May 27, 2005, but did not reach Plaintiff by the time of his fall on May 29, 2005.  Yet even if this sufficed to prove Doctor Weinstock negligent, the mere fact that he failed to alleviate a significant risk that he should have perceived does not rise to the level of deliberate indifference.  See Vega, 2011 WL 2471295, at *16 (citing Farmer, 511 U.S. at 838).  "Negligently failing to cause a prisoner to be assigned to a lower bunk does not satisfy the subjective element

7

of the legal standard governing claims of deliberate indifference to a serious medical need under the Eighth Amendment." Felix-Torres v. Graham, 687 F. Supp. 2d 38, 53 (N.D.N.Y. 2009) (listing cases so holding).  Aside from a number of conclusory allegations, there is no evidence in the record that Doctor Weinstock acted on the basis of anything other than his medical opinion.  See Francis v. United States, No. 3:10cv1474, 2011 WL 3563146, at *5 (D. Conn. Aug. 12, 2011) (providing treatment other than that requested insufficient to demonstrate culpable state of mind).

Having considered Defendants' conduct prior to May 29, 2005, this Court must now examine Defendants' conduct following Plaintiff's fall.  Approximately 17 minutes passed between the time Plaintiff fell and the time a nurse arrived to administer care.  Another 15 minutes passed before the decision was made to transfer Plaintiff to the Cayuga Emergency Medical Center.  There, Plaintiff was evaluated and x-rayed.  Although x-rays showed no further injury, upon his return to Five Points, Plaintiff was kept in the infirmary for an additional 24 hours.  Plaintiff was diagnosed with a strain, soft tissue injury, and minor abrasions to one knee.  Later an orthopedic specialist examined Plaintiff, as a result of which Plaintiff received several weeks of physical therapy and multiple MRIs.  The physical therapist observed no unusual neck, back, or shoulder problems.  The MRI on Plaintiff's spine revealed only mild spurring and natural changes associated with the aging process.  Considered together, this level of extensive and prolonged care is vastly different from that in cases where courts have inferred deliberately indifferent behavior.

For example, in Vega defendants discontinued the plaintiff's pain medication for six months, ignored his repeated requests for medication, did not renew his bunk pass, and, contrary to his wishes, prescribed psychiatric drugs. 2011 WL 2471295, at *17. This, the

court concluded, could suffice to demonstrate deliberate disregard.  Similarly, in <u>Wilson v. King</u>, a physician's assistant ignored an inmate's complaints of injury and involvement in a fight, and directed him back into the cell containing the abusive cell mate.  No. 08-CV-509, 2010 WL 3724128, at *8 (N.D.N.Y. Aug. 23, 2010).  Plaintiff's continued treatment here, by contrast, resembles the more numerous cases in which defendants' efforts to treat an inmate were recognized as absolving them of a culpable state of mind.  <u>See</u> <u>Murray v. Ramineni</u>, No. 08-CV-809, 2011 WL 1315777, at *17-19 (N.D.N.Y. Mar. 3, 2011) (continued medical care weighs against finding defendants indifferent); <u>Wilson</u>, 2010 WL 3724128, at *9 (prompt referral to medical professional does not signify deliberate indifference).  Plaintiff's many weeks of physical therapy, multiple MRIs, and x-rays all attest to constant and timely medical attention to Plaintiff's needs.  Such care can hardly be described as shocking the conscience.  Consequently, Plaintiff has not satisfied the subjective element of his Eighth Amendment claim and Defendants' Motion for Summary Judgment will be granted.

However, in addition to Doctor Weinstock's alleged misdiagnosis, Plaintiff also alleges deliberately indifferent acts by several other Five Points' personnel.

Plaintiff alleges that Defendant C.O. Williams prohibited Plaintiff from laying his mattress on the floor to sleep on, even after Plaintiff explained that he could not climb to the top bunk.  The record reflects, however, that C.O. Williams was only complying with Five Points' regulations, which require a cell's floor be kept clear for easy access by prison officials.  Five Points' interest in ensuring quick entry into any cell is clearly related to the legitimate concern of maintaining a safe detention facility.  <u>See</u> <u>Turner v. Safley</u>, 482 U.S. 78, 89, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987) (prison regulations upheld if "reasonably

9

related to legitimate security interests").   Defendant's conformity with such a regulation cannot be construed as an act of deliberate indifference.

Moreover, despite Plaintiff's protestations, he did not have a lower bunk pass at the time in question, and hence C.O. Williams, and other prison officials accused of similar behavior, were under no obligation to comply with Plaintiff's request for a bottom bunk.  In a facility in which bottom bunk passes are issued and must be presented to prison guards, an inmate's failure to possess such a permit is sufficient grounds to deny requests without that guard acting with deliberate indifference.   Plaintiff's failure to demonstrate the necessary permit meant the guards did not have Five Points' official sanction and might have had to breach Five Points' regulations in order to assist Plaintiff.   Under these circumstances, Defendants' failure to respond to Plaintiff's requests does not evidence the state of mind necessary to violate his constitutional rights.

Plaintiff's confusion on this point appears to stem from his belief that the paperwork he received while housed at the Metropolitan Correctional Center, and which requested that Plaintiff be provided a lower bunk, constituted a "permit" for purposes of Five Points. However, the two facilities have varying standards for when a lower bunk permit would be issued.  There is also no evidence that a permit in one facility would transfer to another. Prison guards were not required to give credence to an inmate's medical paperwork where their own facility had evaluated him and concluded that a different form of treatment was more appropriate.[3]

---

[3]There appears to be some discrepancy regarding when Plaintiff actually received his pass and was moved to a lower bunk.  Although Defendants claim that Plaintiff was moved to a lower bunk on June 1, 2005, Plaintiff alleges that a day later he was showing his pass to C.O. Williams, who refused to move him to a lower bunk until another officer was available.  (See Pl.'s Resp. ¶ 40.)  The prison's failure to promptly move Plaintiff upon receipt of his bunk pass appears to constitute an isolated incident.  Even

Also named as Defendants, were the former Superintendent of Five Points Thomas Poole, as well as Thomas Eagen, the former Director of the Inmate Grievance Program Central Office Review Committee.  The record is replete with examples of Plaintiff availing himself of the grievance program, but there is nothing to suggest that the result of any of these complaints was caused by deliberate indifference.  The mere fact that Defendants Poole and Eagen found against Plaintiff in these proceedings does not show that they had the state of mind necessary to violate Plaintiff's constitutional rights.  See Jordan v. Fisher, 773 F. Supp. 2d 255, 275-76 (N.D.N.Y. 2011) ("[E]ven if objectively unreasonable, a defendant's mental state may be nonculpable." (quoting Salahuddin v. Goord, 467 F.3d 263, 281 (2d Cir. 2006)).

Finally, Plaintiff alleges a series of additional acts and omissions by various other defendants, including Nurse Goodwin for denying him access to see a doctor, as well as various other guards for not taking action upon learning of Plaintiff's medical conditions.  A review of the record does not support Plaintiff's allegations.  As discussed above, the mere fact that various facility personnel were subjectively aware of Plaintiff's condition does not imbue them with a reckless disregard for Plaintiff's requests where facility regulations support their acts.

Although this Court must interpret the evidence in favor of Plaintiff, the lack of

---

assuming C.O. Williams did, in this instance, refuse to immediately move Plaintiff despite Plaintiff's bunk pass, this does not suffice to show that the officer was anything more than negligent.  See Connors v. Heywright, No. 02 Civ. 9988, 2003 WL 21087886, at *3 (S.D.N.Y. May 12, 2003) (dismissing claim of deliberate indifference even where plaintiff was placed on top bunk while having mandatory lower bunk slip).  Similarly, Plaintiff alleges that C.O. Williams denied him sick slips.  The evidence shows that Plaintiff was provided sick slips on numerous occasions.  The one instance in which this appears not to have been the case was on June 7 or June 8, 2005 when Plaintiff asked for a sick slip but was not given one.  Defendants contend this was only because the office filing cabinet had run out of sick slips.  Whether this was actually the case or not, this one instance, compared to the multiple other times Plaintiff was given several sick slips, does not suffice to evidence the necessary state of mind on behalf of Defendants.

evidence showing anything more than mere negligence leads to the conclusion that the subjective element was not met. Defendants' motion to dismiss Plaintiff's claim for inadequate medical care will be granted.

### 2.    Deprivation of Care

Although this Court concludes that Plaintiff's deprivation claim must be rejected because it fails to demonstrate Defendants' culpable state of mind, Plaintiff's *pro se* status leads this Court to observe that even if the requisite state of mind had been shown, Defendants' Motion for Summary Judgment would still be granted.

"Analysis of the objective, 'sufficiently serious,' requirement of an Eighth Amendment medical indifference claim begins with an inquiry into 'whether the prisoner was actually deprived of adequate medical care . . .', and centers upon whether prison officials acted reasonably in treating the plaintiff." Domenech, 2010 WL 6428459, at *4 (quoting Salahuddin, 467 F.3d at 279). Only where prison officials failed to act reasonably does a court go on to consider whether the inadequacy of the care is sufficiently serious or whether, where no medical care was provided, the injury itself was sufficiently severe. Salahuddin, 467 F.3d at 279. This Court concludes that Defendants provided Plaintiff with reasonable care.

Although Defendants initially denied Plaintiff a lower bunk pass, leading to Plaintiff's fall, it cannot be said that Defendants failed to provide Plaintiff with reasonable care. "A prisoner is only entitled to *reasonable care* and only 'deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.'" Dichiara v. Wright, No. 06 CV 6123, 2011 WL 1303919, at *5

12

(E.D.N.Y. Jan. 6, 2011) (quoting Wilson v. Seiter, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991)) (emphasis in original).  "Where the dispute concerns not the absence of help, but the choice of a certain course of treatment, or evidences mere disagreement with considered medical judgment, we will not second guess the doctor."  Id. (quoting Hathaway, 37 F.3d at 70).

In Murray, plaintiff alleged that he did not receive adequate pain relief for his back and ankle ailments. 2011 WL 1315777, at *18-19.  Plaintiff in that case, as Plaintiff here, received a wide range of assistance, consisting of numerous evaluations, x-rays, assistive devices, and therapy.  Id. at *19-20.  Similarly here, Plaintiff was given use of a cane, knee brace, physical therapy, x-rays, MRIs, and a series of medical examinations, including by an orthopedic specialist.  Although plaintiff in Murray argued that he should have been provided additional assistance in the form of a cane or back brace, not unlike Plaintiff here argues he should have been provided with a bottom bunk, "such allegations constitute no more than a difference of opinion regarding treatment" which is "insufficient to establish deliberate indifference." Id. at *18-19. Objectively, plaintiff was provided with a reasonable level of care.  He was entitled to no more.

Having found that Plaintiff was provided reasonable care, Defendants' Motion for Summary Judgment would be granted even were Defendants' to have acted with a culpable state.  See Salahuddin, 467 F.3d at 280.

### D.    Qualified Immunity

Defendants argue that, even assuming Plaintiff suffered constitutional deprivations, they are entitled to qualified immunity.  Officials are protected from § 1983 liability on the

basis of qualified immunity if (1) their actions did not violate clearly established law, or (2) it was objectively reasonable for them to believe that their actions did not violate the law. See Warren v. Keane, 196 F.3d 330, 332 (2d Cir. 1999).  As discussed above, this Court finds that Defendants' treatment of Plaintiff met the constitutional requirements of the Eighth Amendment.  Moreover, it is objectively reasonable to conclude that Defendants' believed that their own actions met that standard.  Accordingly, this Court finds that even assuming the existence of a constitutional violation, Defendants are entitled to qualified immunity.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted.

## V.  ORDERS

IT HEREBY IS ORDERED, Defendants' Motion for Summary Judgment (Docket No. 31) is GRANTED.

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED.


Dated: September 18, 2011
          Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
Chief Judge
United States District Court

14